**[Cite as *State v. Smith*, 2023-Ohio-126.]**

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2021-P-0073** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the<br>Court of Common Pleas |
| BRIAN K. SMITH, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 00280 |

---

**O P I N I O N**

Decided: January 17, 2023
Judgment: Affirmed

---

*Victor V. Vigluicci,* Portage County Prosecutor, and *Theresa M. Scahill,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Jason M. Jordan,* Jason M. Jordan Legal Services, LLC, 3580 Darrow Road, Stow, OH 44224 (For Defendant- Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Brian Smith, appeals the trial court's restitution order. For the following reasons, we affirm the judgment of the Portage County Court of Common Pleas.

{¶2} Appellant was indicted for receiving stolen property (specifically, the victim's Chase Freedom credit card), identity fraud, and forgery. The record is barren of many details regarding these crimes. We are left to discern what happened largely from a Victim Impact Statement. There, the victim explained that she was at the hospital when she was separated from her wallet, which contained her driver's license, her credit card, and her Permanent Resident Card.

{¶3}  On May 26, 2021, pursuant to a plea agreement, the count of forgery was dismissed, and Appellant plead guilty to count 1: receiving stolen property, a felony of the fifth degree, in violation of R.C. 2913.51; and count 2: identity fraud, a felony of the fifth degree, in violation of R.C. 2913.49.

{¶4}  At the Plea Hearing, the court accepted the guilty pleas, and sentenced Appellant to probation.  As a term of Appellant's probation, the court ordered him to pay the victim $990 of restitution.  The victim provided receipts and bills showing the expenses for which she sought restitution: $450 for legal services to assist in obtaining a new Permanent Resident Card; and $540 for the filing fees for the application to replace the Permanent Resident Card.  The court ordered restitution for the total amount: $990.

{¶5}  Appellant's attorney objected to restitution order, and the court scheduled a hearing on Appellant's objection.

{¶6}  The court held a Restitution Hearing.  Appellant's attorney again objected to restitution, arguing that the victim's expenses were merely consequential and not a direct and proximate result of Appellant's crimes: receiving stolen property (specifically, the credit card) and identity fraud.  The court disagreed, overruled Appellant's objection, and confirmed the order of restitution in the amount of $990.

{¶7}  "FIRST ASSIGNMENT OF ERROR: The trial court committed reversible error when it imposed restitution upon Defendant-Appellant in the amount of $990.00."

{¶8}  Appellate courts review felony restitution orders pursuant to R.C. 2953.08(G)(2). *State v. Williams*, 11th Dist. Lake No. 2020-L-111, 2021-Ohio-2814, ¶ 16.

{¶9}  For purposes of this appeal, our standard of review, under R.C. 2953.08(G)(2), provides:

Case No. 2021-P-0073

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds * * * that the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2)(b).

{¶10} In conducting that analysis, we are commanded to "review the record, including the findings underlying the sentence * * *." *Id.*

{¶11} Appellant asks this court to review whether the felony restitution order imposed was a direct and proximate result of the commission of the offense of which the court below found him guilty after accepting his plea.

{¶12} R.C. 2929.18(A)(1) provides that financial sanctions for a felony may include: "Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."

{¶13} "'Economic loss' means any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense." R.C. 2929.01(L).

{¶14} A "direct result" is one which the conduct causes in fact, "meaning that the result would not have occurred 'but for' the conduct." *State v. McNear*, 1st Dist. Hamilton No. C-190643, 2020-Ohio-4686, ¶ 8, quoting *State v. Lovelace*, 137 Ohio App.3d 206, 216, 738 N.E.2d 418 (1st Dist.1999).

{¶15} Our Supreme Court has subsumed the "direct cause" concept within its definition of proximate cause: "The proximate cause of an event is that which in a natural

3

and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred." *Aiken v. Indus. Comm'n*, 143 Ohio St. 113, 117, 53 N.E.2d 1018 (1994).

**{¶16}** The Ohio Supreme Court has said indirect expenses are "consequential" and not recoverable under R.C. 2929.18. *Lalain* at ¶ 25. Consequential costs include expenses incurred indirectly from the crime where there is not a significant causal relationship between the crime committed and the expense. *In re Z.N.,* 2015-Ohio-1213, 29 N.E.3d 1016, ¶ 22 (11th Dist.). For example, in *State v. Plants*, 8th Dist. Cuyahoga No. 101552, 2014-Ohio-5293, the appellate court reversed the trial court's imposition of restitution for a security system the victims installed after the defendant's criminal acts (burglary). The 8th District concluded that the costs were consequential and indirect to the crime because "the stated reason the victims installed the security system was to deter future crime by the defendant." *Id.* at ¶ 5.

**{¶17}** Appellant contends that the victim's expenses were consequential to the crimes and accrued after the theft. The question before us is whether the law and the trial court record "clearly and convincingly" demonstrate that he is right. We conclude they do not.

**{¶18}** Proximate cause is a question of fact, and we review questions of fact for abuse of discretion. *Westfall v. Lemon*, 4th Dist. Washington No. 14CA12, 2015-Ohio-384, ¶ 23, citing *Strother v. Hutchinson*, 67 Ohio St.2d 282, 288, 423 N.E.2d 467 (1981), citing *Clinger v. Duncan*, 166 Ohio St. 216, 141 N.E.2d 156. However, we cannot modify or vacate a felony sentence under R.C. 2953.08(G)(2(b) unless we find "clearly and convincingly" that it is contrary to law. In other words, we must have a "firm belief" that it

4

Case No. 2021-P-0073

is contrary to law. *State v. Mullins*, 11th Dist. Portage No. 2012-P-0144, 2013-Ohio-4301, ¶ 21.

{¶19} When reviewing whether a restitution order was a direct and proximate result of the commission of the offense, appellate courts review the record to determine whether it supports the trial court's findings regarding causation. See *State v. Lacey*, 5th Dist. Richland, No. 2005-CA-119, 2006-Ohio-4290; *State v. South*, 3rd Dist. Logan No. 8-04-41, 2005-Ohio-4617; *State v. Rivera*, 8th Dist. Cuyahoga No. 84379, 2004-Ohio-6648. We also review whether or not "the amount of the restitution [is] supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Cambron*, 2020-Ohio-819, 152 N.E.3d 824, ¶ 19 (4th Dist.), citing *State v. Johnson*, 4th Dist. Washington No. 03CA11, 2004-Ohio-2236, ¶ 10, *State v. Sommer*, 154 Ohio App.3d 421, 424, 2003-Ohio-5022, 797 N.E.2d 559, at ¶ 12 (5th Dist.), *State v. Gears*, 135 Ohio App.3d 297, 300, 733 N.E.2d 683 (6th Dist.). Here, there is no contention regarding the amount of restitution ordered.

{¶20} We first analyze whether the restitution ordered was a direct and proximate cause of Appellant's conviction of receiving stolen property.

{¶21} The elements of Ohio's receiving stolen property offense are that the defendant received, retained, or disposed of property and had reasonable cause to believe that the property had been obtained through the commission of a theft offense. R.C. 2913.51.

{¶22} In the case at bar, the state concedes that the restitution ordered was not a direct and proximate result of receiving stolen property because the indictment specifically

5

listed the stolen property in question as the victim's Chase Freedom credit card. We agree. The victim's requiring a new Permanent Resident Card resulted indirectly from Appellant receiving or retaining the victim's credit card. In this instance, there is not a significant causal relationship between Appellant's conviction of receiving stolen property and the expenses the victim incurred relating to her Permanent Resident Card.

{¶23} We next analyze whether the restitution ordered was a direct and proximate cause of Appellant's conviction of identity fraud.

{¶24} The elements of identity fraud in Ohio are that the defendant, without the express or implied consent of the victim, used, obtained, or possessed any personal identifying information with the intent to hold himself out to be the victim or to represent the victim's personal identifying information as the defendant's own. R.C. 2913.49.

{¶25} There is not much in this record to suggest that Appellant used, obtained, or possessed the victim's Permanent Resident Card with either intent to hold himself out to be the victim, or to represent her Permanent Resident Card information as his own. But, what is in the record is fatal to Appellant's position: His pleading guilty to the allegations set forth in the indictment. By pleading guilty to identity fraud, Appellant admitted that he used, obtained, or possessed the victim's personal identifying information with either intent to hold himself out to be the victim, or to represent her information as his own. The victim's Permanent Resident Card, which was contained in the wallet Appellant possessed, is clearly personal identifying information.

{¶26} If Appellant had not "possessed" the wallet, we cannot say what the effect on the victim would have been. But he did "possess" it, and the Permanent Resident Card, and (by his guilty plea) admitted as much and the *mens rea* necessary to complete

6

the crime charged in count two of the indictment. For so long as he possessed it, he denied the victim of any chance of regaining possession of it. Because of her unique situation, being an immigrant who speaks little English, it was not unreasonable for the trial court to have concluded that the victim needed an attorney's assistance to apply for the new card. Thus, legal fees and filing fees were a direct result of Appellant's crimes.

{¶27} The costs incurred for legal services and filing fees were also a proximate result of Appellant's committing identity fraud. It was a natural and continuous sequence, unbroken by any new, independent cause, that required the victim to have to apply for a new card. When one loses any personal identification card, whether it be a permanent resident card, driver's license, or credit card, a continuous and natural consequence of that loss is that the owner needs to acquire a new one. The victim here was therefore required to replace the Permanent Resident Card because it was gone, and Appellant possessed it. Thus, the costs incurred were a proximate result of Appellant's crimes.

{¶28} It could be argued that the real "proximate cause" of the victim's loss was being (in her words) "separated from her wallet." Since there is nothing in the record to suggest Appellant had anything to do with initially separating her from her wallet, perhaps it was not his conduct, but some other occurrence that caused her need to replace the card. Yet, we need not decide that. There can be more than one "proximate cause" of a harm. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 587, 575 N.E.2d 828 (1991). But, on this record, the only one the trial court could rationally have found was Appellant's possessing the Permanent Resident Card; we cannot say its decision was "clearly and convincingly" contrary to law.

7

{¶29} Appellant argues next that an attorney's services are not required for filing an application for the new card.

{¶30} Appellant relies on *State v. Lalain*, supra, to boldly imply that attorney fees are always consequential costs and are never recoverable. At the Restitution Hearing, the court found *Lalain* "distinguished from this situation." We agree.

{¶31} *Lalain* is distinguishable because the request for restitution in that case was not for attorney fees. Rather, the victim was a corporation that requested restitution for the value of the time its employees spent assisting the prosecution. *Id.* at ¶ 11. The court held that expenses for time spent in furtherance of a lawsuit were not a direct and proximate result of the crimes, but were consequential costs and not recoverable under restitution. *Id.* at ¶ 25. Here, the victim's expenses were not incurred to advance her claim, but to ameliorate the effects of Appellant's conduct.

{¶32} The expenses the victim incurred were directly and proximately related to Appellant's crime. The trial court's restitution order was not "clearly and convincingly" contrary to law, and restitution was appropriate.

{¶33} Appellant's assignment of error is without merit.

{¶34} The judgment of the Portage County Court of Common Pleas is affirmed.


MATT LYNCH, J., concurs,

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

_____

Case No. 2021-P-0073

THOMAS R. WRIGHT, J., dissents with a Dissenting Opinion.

{¶35} I dissent.

{¶36} Appellant argues that the trial court impermissibly based the restitution amount on costs incurred that exceeded "the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense," in violation of R.C. 2929.18(A)(1).

{¶37} With respect to restitution orders, "the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a *direct and proximate* result of the commission of the offense." R.C. 2929.18(A)(1); *accord State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, paragraph one of the syllabus ("the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense") and *State v. Yerkey*, --- Ohio St.3d ----, 2022-Ohio-4298, --- N.E.3d ---- (affirming appellate court's reversal of restitution for lost wages incurred by crime victim who chose to attend court proceedings). Here, there is no indication that the victim suffered *any economic loss as a direct and proximate result of the offenses committed*.

{¶38} Whoever took the card was the primary cause of the victim's economic loss, if any, and there is nothing of record showing that appellant took the card and pleaded to an alternative offense. Moreover, while I agree with the majority that there can be more than one proximate cause, they fail to identify any facts in the record or in their opinion that appellant's possession was a proximate cause. The majority aptly defines proximate cause but fails to apply it. The majority readily acknowledges that "[i]f appellant had not possessed the [card], we cannot say what the effect on the victim would have been," only

9

that for so long as appellant possessed it, he denied the victim any chance of regaining the card. By definition, that does not meet the "but for" causation test. Experience and reason dictate that once the primary theft crime was committed, there was little to no chance that the victim would be reunited with the card regardless of appellant's identity fraud crime. The majority's conclusion that the victim would not have needed to replace the card "but for" appellant's conduct is therefore demonstrably erroneous. Causation lacking, the restitution order is contrary to law.

{¶39} Although it would be rare, this is not to say that restitution could never be ordered against an offender convicted of identity fraud for replacement of identifying documentation following theft by another. However, where the record is, as here, devoid of facts establishing causation, restitution is improper.

{¶40} I dissent and would reverse the restitution order.

Case No. 2021-P-0073