[Cite as *State v. Nelson*, 2024-Ohio-1773.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-230422 |
| | | TRIAL NO. | 23CRB-151 |
| Plaintiff-Appellee, | : | | |
| vs. | : | *O P I N I O N.* | |
| ANDREA NELSON, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed

Date of Judgment Entry on Appeal: May 10, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Christopher J. Powers*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Milton and Charlotte Kramer Law Clinic, Case Western Reserve University School of Law*, *Andrew S. Pollis,* Supervising Attorney, and *Kayla Tharp* and *Michael O'Donnell,* Legal Interns, for Defendant-Appellant.

**Bock, Presiding Judge.**

{¶1}   Defendant-appellant Andrea Nelson challenges the trial court's $2,900 restitution order, which the court imposed to compensate the victim for attorney fees. We hold that the attorney fees incurred to assist the state in its prosecution of the case against Nelson are not the proximate result of the offense and are therefore an improper basis for a restitution order. We sustain Nelson's sole assignment of error and reverse the restitution order.

## I. Facts and Procedure

{¶2}   In January 2023, a double-parked car sparked a multiperson neighborhood brawl. Nelson was convicted for misdemeanor assault for striking her neighbor during the fight. At Nelson's bench trial, the victim's private attorney requested a no-contact order and restitution "in the form of her attorney fees?" The trial court responded, "[N]o, not attorneys' fees. I can't order that."

{¶3}   At the sentencing-and-restitution hearing the following month, the state and the victim's private attorney argued that the trial court had the authority to order Nelson to pay $2,900 in attorney's fees as part of the "victim's economic loss" under R.C. 2929.28(A)(1). The victim testified that she "went and got a lawyer" following the assault. All told, the victim paid her attorney $2,900.

{¶4}   The victim's attorney testified that she was hired to seek a civil protection order and to "represent[] her for this criminal matter, the criminal proceeding in Municipal Court." She also explained that her role

> [I]nvolved me contacting the prosecutors for this Municipal Court
> criminal case and talking with them about the facts, making sure that
> they had the evidence that was necessary to move forward, like the
> video, the photos. And it involved me meeting with [the victim] and the

prosecutor that prosecuted the case to go over her testimony and get her ready for trial.

It involved me coming to trial and having preliminary discussions with the prosecutor, defense counsel and the Judge, in chambers. And I was here for the criminal proceedings.

{¶5} The victim's attorney billed for "meeting with the prosecutor to get [the victim's] testimony ready for trial, and my attendance at the trial on that day." The attorney billed for researching the restitution statute and preparing for the restitution hearing. While the invoices reference a separate case number, the victim's attorney was hired "for both [cases], and it's all the same incident that resulted in Nelson's conviction." The victim's attorney defended her billing practices, explaining that she met "with [Nelson's defense counsel] and the prosecutor on [the day of the trial], and the Judge, in chambers, arguing that the case going forward and all kinds of legal and procedural issues."

{¶6} The victim's attorney emphasized:

There would be no trial if it wasn't for me, because the only reason the defendant got arrested is because it was me that called a captain of the police force to make them arrest your client so they could bring charges.

So I am the reason why she is convicted. But for me, she would have never even gotten arrested. And I didn't charge my client for that.

So I didn't just sit here. There would be no conviction if it wasn't for me, because I'm the reason why there was an arrest to begin with.

{¶7} The trial court sentenced Nelson to 30 days in jail for the assault and ordered her to pay the victim $2,900 in restitution. The trial court explained that the victim "is not situated like many prosecuting witnesses" and "has financial resources."

She used those resources to "g[e]t an attorney" and "paid an attorney a lot of money." The victim "would not have had to pay an attorney a dime if it hadn't been for Ms. Nelson."

**{¶8}** Nelson appeals and challenges the restitution order in a single assignment of error.

## II. Law and Analysis

**{¶9}** Nelson argues that the trial court exceeded its authority and abused its discretion when it ordered her to pay attorney fees as part of the restitution order. She maintains that the attorney fees were not the proximate result of her conduct. Rather, she contends that the attorney fees were voluntarily incurred and were therefore an improper basis for restitution. The state agrees and concedes the error.

**{¶10}** We review the trial court's restitution award in misdemeanor cases for an abuse of discretion. *State v. Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, ¶ 10, quoting *State v. Miles,* 1st Dist. Hamilton No. C-210226, 2021-Ohio-4581, ¶ 5. Specifically, "[w]hen reviewing whether a restitution order was a direct and proximate result of the commission of the offense, [we] review the record to determine whether it supports the trial court's findings regarding causation." *State v. Smith*, 2023-Ohio-126, 206 N.E.3d 138, ¶ 19 (11th Dist.).

**{¶11}** The Ohio Constitution, as amended by Marsy's Law, states that a victim has the right "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim." Article I, Section 10a(A)(7) of the Ohio Constitution. But "[n]othing in Marsy's Law explicitly or implicitly changes what losses qualify for restitution in Ohio." *State v. Yerkey,* 171 Ohio St.3d 367, 2022-Ohio-4298, 218 N.E.3d 749, ¶ 15.

4

{¶12} We begin with R.C. 2929.28, the statute governing financial sanctions and restitution for misdemeanor offenses. The statute limits restitution to "the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." R.C. 2929.28(A)(1). "Economic loss" is defined by R.C. 2929.01(L) as

> any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense, and the cost of any accounting or auditing done to determine the extent of loss if the cost is incurred and payable by the victim. "Economic loss" does not include non-economic loss or any punitive or exemplary damages.

Because the statute does not identify attorney fees in its nonexhaustive list of economic losses, the victim's attorney fees in this case must be the direct and proximate result of the offense. An "economic loss" is the direct and proximate result of the offense if the loss "is foreseeable and is produced by the natural and continuous sequence of events following the act." *Yerkey* at ¶ 16.

{¶13} The Ohio Supreme Court has explained that a victim-company's attorney fees related to assisting in the prosecution of its former employee's theft are not the "direct and proximate result of the commission of the theft offense; rather, they are consequential costs incurred subsequent to the theft to value the property that had been taken from and later returned to [the company]." *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423. Relying on *LaLain,* the Second District held that "costs associated with documenting a loss and/or pursuing legal action

5

against an offender may not be included in an order of restitution." *State v. Olson,* 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 15 (reversing a restitution order that "improperly included $57,261 that was attributable to accounting and legal fees.").

**{¶14}** Like with most rules, there are exceptions. While legal expenses incurred to assist the prosecution are consequential costs and an improper basis for a restitution order, legal expenses necessary "to ameliorate the effects" of an offense may be the direct and proximate result of an offense. *See Smith,* 2023-Ohio-126, 206 N.E.3d 138, at ¶ 31 (theft of Spanish-speaking victim's wallet that held her Permanent Resident Card was the direct and proximate cause of fees related to replacing the card).

**{¶15}** We agree with the parties that the victim's attorney fees are consequential costs and incurred to assist with the prosecution of the case against Nelson. The victim's attorney said as much at the restitution hearing. Moreover, the trial court's statement that the victim is "not situated like many prosecuting witnesses" supports our conclusion that hiring a private attorney to assist in Nelson's prosecution is not a foreseeable result of the offense. Rather, it constitutes an intervening act that broke the causal connection between the offense and the victim's legal fees. Therefore, we sustain Nelson's single assignment of error and reverse the restitution award.

### III. Conclusion

**{¶16}** We sustain Nelson's assignment of error and reverse the restitution order.

Judgment reversed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.